UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

John R. Crooker

    v.                                           Civil No. 05-cv-008-JD
                                                 Opinion No. 2007 DNH 069

Anheuser-Busch, Inc.


O R D E R

In his first claim under the Employee Retirement Income Security Act ("ERISA"), John R. Crooker seeks retiree medical benefits from his former employer, Anheuser-Busch, Inc. ("AB"). AB denied his claim for benefits, concluding that he was ineligible due to his age and insufficient years of creditable service with AB when he ceased active work. Crooker and AB have filed a joint statement of material facts and each has filed a motion for judgment on the administrative record as to Crooker's first claim.


Background

Crooker began his employment with AB at the Merrimack, New Hampshire, brewery in 1971. He became a member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union #633, at the same time. On

February 27, 1997, Crooker was injured at work.  He was fifty-one years old at the time of his injury.

Because of his injury, Crooker stopped working on October 25, 1998, and began receiving workers' compensation benefits.  At that time, Crooker had accrued eight years and five and one-half months of continuous employment with AB since his forty-fifth birthday.  Crooker was maintained on the AB payroll records with contractual wage increase information until September 18, 2002, when he entered into a Severance Agreement with AB to settle his workers' compensation claim.  As part of that agreement, Crooker resigned from employment at AB as of September 18, 2002.

As a member of Local Union #633, the terms and conditions of Crooker's employment at AB were governed by a collective bargaining agreement (the "CBA"), the 1998-2004 Plant Agreement Between AB and the Brewery and Soft Drink Workers Conference, U.S.A. and Canada and Local Union 633 Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.  AB also provided insurance benefits through the Group Insurance Plan for Certain Employees of Anheuser-Busch Companies, Inc., which includes the Information Sheet for Early Retiree Eligibility and the Administrative Booklet, (the "Plan").  Under the terms of the CBA and the Plan,

members of the Union could be eligible for retiree health benefits based on meeting certain requirements.

Crooker filed suit to receive retiree medical benefits from AB, who removed the action from state court to this court.  In his third amended complaint, Crooker alleged two ERISA claims, one under 29 U.S.C. § 1132, seeking medical benefits under the Plan, and a second claim, brought under 29 U.S.C. § 1140, alleging that AB discharged or discriminated against him to interfere with his rights under the Plan.  The parties agreed to remand the § 1132 claim to the Plan Administrator for a redetermination of Crooker's eligibility.  The second claim, brought under § 1140, is stayed pending the outcome on the first claim.

On March 8, 2006, the AB Health and Welfare Benefits Eligibility Appeals Committee denied Crooker's claim for retiree medical benefits because he had not achieved ten years of credited service.  AB determined that the time Crooker was not working, after October of 1998 but before his employment was terminated in 2002, was not credited service because he did not return to active work.

Crooker appealed that decision, arguing that the Committee improperly interpreted provisions of the summary plan description and applied non-relevant rules for a leave of absence to his

application.  He argued that because he remained an AB employee until 2002, that time should have been credited toward service for purposes of his eligibility for retiree medical benefits.  AB denied his appeal "due to his not meeting the age and service requirements for retiree medical coverage at the time of his separation of employment from Anheuser-Busch . . . .'  Ad. Rec. at 137.  The Committee again concluded that because Crooker did not have a qualifying leave of absence, the time between October of 1998 and September of 2002 did not count toward credited service.  The Committee also stated:  "Contrary to the assertions you make in your letter of April 20, 2006, Anheuser-Busch administrators and the Committee have consistently interpreted the Plan Documents's two year limitation and return to active work requirements as applying to periods of extended absence due to occupational as well as non-occupational injuries and illnesses."  Ad. Rec. at 139.  The Committee concluded:

> Based on the foregoing, it is the Committee's decision that under the retiree medical eligibility rules Mr. Crooker's credited service stopped accruing as of October 25, 1998, his last day of active work prior to his leave of absence.  At that time Mr. Crooker was 53 years old, had 8 years of credited service under the Plan, and was ineligible for retiree medical.

Ad. Rec. at 139.

The parties now seek judgment on the administrative record as to Crooker's claim for retiree medical benefits brought under § 1132.

4

Standard of Review

Anheuser Busch Corporation, AB's parent, is the Plan Administrator. The parties agree that the Plan gives the Administrator discretionary authority to interpret its provisions and to make eligibility determinations. Ordinarily, such discretionary authority means that the Administrator's decision is reviewed deferentially, under an arbitrary and capricious standard. See Morales Alejandro v. Med. Card Sys., Inc., --- F.3d ---, 2007 WL 1430180, at *3 (1st Cir. May 16, 2007).

Crooker argues that because the decision to deny him benefits was not made by a third-party entity, "heightened scrutiny of Anheuser-Busch's determination regarding Mr. Crooker's eligibility is warranted due to the inherent conflict of interest created by Anheuser-Busch's role as both administrator and employer." Pl. Mem. at 5. Crooker further argues that when a potential conflict of interest exists, the court should review the challenged interpretation of the plan and the surrounding circumstances to determine whether the structural conflict influenced the decision to deny benefits. AB disputes Crooker's conflict theory and asserts that the deferential standard applies here.

Recently, a split panel of the First Circuit stated that the standard applicable in ERISA cases where the plan administrator is both the decision maker and the payor of benefits should be

5

addressed by that court sitting en banc.  Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 19 & 41 (1st Cir. 2007). As that has not yet occurred, this court applies the "battle-tested standard of review."  Id. at 40.

The First Circuit holds that "the fact that the plan administrator will have to pay the claim out of its own assets does not change the arbitrary and capricious standard of review." Id. at 29 (internal quotation marks omitted); Green v. ExxonMobil Corp., 470 F.3d 415, 418 n.2 (1st Cir. 2006).  Instead, to heighten the standard, the plaintiff must show that an improper motivation actually affected the decision to deny benefits. Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 140 (1st Cir. 2006).  If such a conflict is demonstrated, the court "may cede a diminished degree of deference – or no deference at all – to the administrator's determinations."  Id. at 141.

Crooker argues that AB's improper motivation is demonstrated by its requirement that he resign his employment as a condition of receiving the settlement of his workers' compensation claim against AB.  He contends that requirement shows that AB has an interest in ending the employment of its employees who were injured while working at AB and asserts that AB's "interest in severing employment with workers injured on the job is related to the claims of these workers for retiree benefits."  Pl. Mem. at 6.  He explains that he lacks evidence to support his theory

6

because the severance requirement is part of his second claim, which is stayed pending the outcome the motions for judgment on the administrative record.

Speculation that AB may have wanted to terminate Crooker's employment to make him ineligible for benefits, if that indeed is Crooker's theory, does not demonstrate a conflict of interest that invokes a heightened standard of review. See Tsoulas v. Liberty Life Assurance Co. of Boston, 454 F.3d 69, 77 (1st Cir. 2006) ("'To affect the standard of review . . . a conflict of interest must be real. A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due.'" quoting Leahy v. Raytheon Co., 315 F.3d 11, 16 (1st Cir. 2002)). Therefore, the deferential standard will apply here.

"Under arbitrary and capricious review, [the] court will uphold an administrator's decision to deny benefits to a beneficiary if the decision was reasoned and supported by substantial evidence." Denmark, 481 F.3d at 33. The plan administrator's interpretation of plan language and its decision to deny benefits must both be reasonable. Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 17 (1st Cir. 2006). The court, however, must defer to a reasonable decision and is not free to substitute its own judgment for that of the administrator. Denmark, 481 F.3d at 33.

7

Discussion

An AB employee, such as Crooker, who was hired before January 1, 1995, is eligible for retiree medical benefits if terminated from a full-time hourly position after January 1, 1995, and "on your last day of active work: you are at least age 55 but younger than 65, you have at least 10 years of credited service as defined later in this information sheet, and you are represented by IBT 633 at the Merrimack brewery." Ad. Rec. at 141. Credited service is defined to mean "continuous years of employment" and includes "any periods of layoff or authorized leave of absence of up to two years, only if you return to active work at the end of the period." Ad. Rec. at 142.

It is undisputed that on October 25, 1998, Crooker "ceased working because of [a job related injury] and [] began receiving workers compensation benefits on October 26, 1998." Joint Statement ¶ 3. It is also undisputed that he never returned to work at AB. He was fifty-three years old and had almost eight and a half years of credited service when he ceased working at AB. He remained an AB employee, however, until September of 2002, when he resigned his employment in exchange for settling his workers' compensation claim against AB.

Based on the undisputed facts, Crooker did not qualify for retiree medical benefits when he ceased working on October 25, 1998. In response to his application for benefits, AB considered

8

whether the time between October 25, 1998, and September 18, 2002, while Crooker received workers' compensation because of his injury but did not work at AB, was an authorized leave of absence that qualified as "credited service."  AB concluded that the time after October 25, 1998, was not credited service because Crooker did not return to full-time active work as would be required under the leave of absence provision.

Crooker argues that he should be credited for the time he received workers' compensation benefits, although he was not working, because he remained an AB employee during that time.  He argues that because an employee earns "one year of credited service for each year of full-time employment," he should have been credited for the four additional years he remained an employee.  He contends that the leave of absence provisions in the Plan do not apply to him so that his failure to meet their requirements does not bar his eligibility for benefits.  Therefore, Crooker argues, AB's interpretation of the Plan, imposing the leave of absence rules on him, was unreasonable and led to an unreasonable decision to deny him benefits.  Crooker also argues that AB unreasonably considered its past interpretations of the Plan that broadened the leave of absence for medical reasons to include work-related injuries.

The eligibility requirements are that an applicant must meet the age and credited service criteria on his last day of "active

9

work."  If Crooker's theory were credited, his last day of "active work" would have been September 18, 2002, when he had not worked at AB for almost four years.  Crooker makes no developed argument that remaining an employee while receiving workers' compensation equates with "active work" as used in the Plan.

In the "Credited Service" section, the Plan defines "active work" in the context of a leave of absence as follows:  "Active work means that you have been medically released to return to work, in accordance with the company policies or collective bargaining agreement in effect at your location."  Ad. Rec. at 142.  Crooker does not suggest that he was medically released to return to work while he was receiving workers' compensation benefits from AB.  He does not point to any other provision in the Plan or the CBA that would allow him to accrue credited service for the time between October 25, 1998, and September 18, 2002, when he was not actively working, although he remained an AB employee.[1]

Therefore, it was reasonable for AB to conclude that during time Crooker remained an employee but did not work he was not engaged in "active work" within the meaning of the Plan.

---

[1] In fact, Crooker states that Article 14 of the CBA, titled "Payment for Time Lost for Medical Attention Related to Injury Arising out Employment," does not provide a leave of absence for job-related injuries.  Article 14 also does not provide for credited service.

10

Further, it was reasonable to conclude that merely remaining an employee, while not working, does not count as "full-time employment" for purposes of accruing credited service. Based on those reasonable conclusions, AB's determination that Crooker did not meet the age or credited service requirements when he ceased active employment was also reasonable. Even if a form of heightened scrutiny applied in this case, AB's determination would meet that level of review. Consequently, neither AB's interpretation of the Plan nor the decision to deny benefits was arbitrary or capricious.[2]

---

[2] Crooker also argues that it was unreasonable for AB to consider other cases where it had broadly interpreted the medical leave provision to include both occupational and non-occupational injuries. In this case, that interpretation did not affect the outcome. Therefore, the court need not consider Crooker's argument.

Conclusion

For the foregoing reasons, the plaintiff's motion for judgment on the administrative record on his first claim (document no. 59) is denied.  The defendant's motion for judgment on the administrative record as to the plaintiff's first claim (document no. 60) is granted.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

May 29, 2007

cc: David A. Garfunkel, Esquire
    Andrea K. Johnstone, Esquire
    Paul B. Kleinman, Esquire
    David W. McGrath, Esquire
    Shenanne Ruth Tucker, Esquire
    John-Mark Turner, Esquire